UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHEN M. HILL,

    Plaintiff,

    v.

HOMEWARD RESIDENTIAL, INC.,

    Defendant.

Case No. 2:13-cv-388
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings: Defendant's motion for summary judgment (ECF No. 19), Plaintiff's combined memorandum in opposition and cross-motion for summary judgment (ECF No. 26), Defendant's reply memorandum (ECF No. 27), Defendant's memorandum in opposition to the cross-motion for summary judgment (ECF No. 28), and Plaintiff's reply memorandum supporting the cross-motion for summary judgment (ECF No. 29). For the reasons that follow, the Court **DENIES** both Defendant's motion for summary judgment (ECF No. 19) and Plaintiff's cross-motion for summary judgment (ECF No. 26).

### I.    Background

In 2006, Plaintiff, Stephen M. Hill, executed a note and mortgage. The servicing of this loan was eventually transferred to Defendant, Homeward Residential, Inc. After Plaintiff fell behind in his payments, Defendant began to call him at work and, since sometime in 2010, on his cell phone as part of its collection efforts. Eventually, at Plaintiff's request, Defendant would call only Plaintiff's cell phone. In April 2013, however, Plaintiff filed the instant action, alleging

1

in two counts that Defendant's numerous calls to his cell phone violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").[1] (ECF No. 1 ¶¶ 44-54.) Defendant has filed a motion for summary judgment on these counts (ECF No. 19), and Plaintiff has filed a cross-motion for summary judgment (ECF No. 26). The parties have completed briefing on the motions, which are ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

---

[1] Plaintiff also originally asserted a third count alleging violations of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.* (ECF No. 1 ¶¶ 55-60.) He later indicated that he was abandoning that claim. (ECF No. 9, at Page ID # 36; ECF No. 10, at Page ID # 38.) The Court construes the filings as dropping the state law claim from this litigation pursuant to Federal Rule of Civil Procedure 16(c)(2)(A) or (B).

verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

The TCPA provides in relevant part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1)(A)(iii). An "automatic telephone dialing system" as used in the TCPA means equipment that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1)(A) & (B). The TCPA also provides a private right of action for violation of the statute and its related implementing regulations, which can result in various forms of relief such as $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3). If a defendant willfully or knowingly commits a violation, a court in its discretion may treble the amount of damages. *Id.*

Both parties seek summary judgment on Plaintiff's TCPA claims on a number of grounds, and their briefing presents a threshold issue of whether the statute is even applicable to the underlying facts. In its memorandum in opposition to Plaintiff's cross-motion for summary judgment Defendant asserts that Plaintiff has failed to point to any evidence that Defendant used an automatic telephone dialing system to call Plaintiff's cell phone. Although Plaintiff has

3

directed this Court to deposition testimony from one of Defendant's employees who repeatedly used the terms "autodialer" and "automatic dialer" in referring to Defendant's equipment, Defendant argues that there is no indication or admission that Defendant's dialing system meets the TCPA definition.

This Court agrees that the mere use of the term "autodialer" or a variation thereof is not sufficient to establish whether the calls were made using equipment that satisfies the requisite statutory definition. *See Keating v. Peterson's Nelnet, LLC*, No. 1:11 CV 1775, 2014 WL 1891369, at *1 n.4 (N.D. Ohio May 12, 2014) (holding that testimony that an "auto dialer" was used "is insufficient, in and of itself, to determine whether the automatic messages were sent using an 'automatic telephone dialing system' "). Because it is Plaintiff's burden to prove each element of his claims, this fact alone precludes this Court from granting Plaintiff's cross-motion for summary judgment. Consequently, the parties' remaining arguments related to Plaintiff's motion are moot.

The insufficiency of the evidence regarding whether the "autodialer" involved here constituted an "automatic telephone dialing system" does not, however, mean that Defendant is invariably entitled to summary judgment. Although raising the equipment issue in opposing Plaintiff's cross-motion for summary judgment, Defendant expressly disavows reliance on the equipment argument in its own motion and states that it is relying only on its prior express consent arguments. (ECF No. 19, at Page ID # 142 n.3.) Moreover, even if Defendant did rely on the equipment argument, such an argument would not prevail in this context.

This Court must draw all reasonable inferences in favor of the nonmoving party. Plaintiff is of course the nonmoving party in regard to Defendant's motion for summary judgment, which

means that the Court must regard the "autodialer" deposition testimony in the same light as *Keating* treated the "auto dialer" testimony in that case; although the testimony was insufficient to establish that an automatic telephone dialing system was used, "this testimony [was] sufficient when taken in the light most favorable to the Plaintiff, to establish this fact for the sole purpose of defending against a motion for summary judgment." *Id.* In other words, Plaintiff would benefit in *opposing* summary judgment as the nonmoving party from a reasonable inference, but Plaintiff does not have that inference in his capacity as a party moving *for* summary judgment.

      Additionally, even setting aside this reasonable inference, additional deposition testimony would present an issue of fact as to the nature of the autodialer Defendant uses. In reviewing a spreadsheet of outgoing calls, a former employee of Defendant testified that three of the calls were made manually, while a fourth call was not. (Kearse Dep., ECF No. 23-1, at Page ID # 262.) Although these calls were all placed on June 30, 2010, subsequent to the 2008 date on which Plaintiff provided Defendant with his cell phone number, the acknowledged automatically placed call coupled with additional testimony of how the call system stored numbers leads to another reasonable inference that regardless of whatever it is called, Defendant's calling equipment places some calls (and did so to Plaintiff) automatically. Treating this operating inference as distinct from the "autodialer" and "automatic dialer" terminology inference, this Court must recognize that they would both have the same effect: they would each prevent Defendant from obtaining summary judgment based on an equipment-related, failure-to-fall-within-the-statute argument.

      Having concluded that Plaintiff cannot obtain summary judgment, the Court is left with the affirmative defense that Defendant presents in arguing that it is entitled to summary

5

judgment.  Defendant argues that its evidence demonstrates that Plaintiff had given Defendant his prior express consent to call his cell phone before any call to that number even occurred.  Plaintiff argues that he never gave Defendant such permission and that even if he agreed to cellular communication, he did not do so at a time that would predate every single one of the numerous calls he received from Defendant on his cell phone within the applicable limitations period.

      Defendant directs this Court to its records, which Defendant asserts indicate that Plaintiff advised Defendant that he had the cell phone number on January 3, 2008.  In an affidavit supplied by an individual who previously worked for Defendant, the affiant states on behalf of Defendant that "[p]er Exhibit A-2, on January 3, 2008, Mr. Hill called Homeward and advised that his telephone number had changed." (Kearse Aff., ECF No. 19-1, at Page ID # 155 ¶ 8.)  Two days after that call, Plaintiff's cell phone number was added to his account.  (*Id.* at ¶ 10.)  These representations do not indicate that Plaintiff actually provided his new number; they indicate that Plaintiff indicated that his number had changed and that Defendant added the new number to its records.  In her deposition, the affiant then testified that based on a call log, a customer service representative who spoke with Plaintiff "notated that the borrower changed his phone number." (Kearse Dep., ECF No. 23-1, at Page ID # 252.)  Again, the missing piece of the chain is whether Plaintiff conveyed his cell number or whether Defendant captured it.  The obvious inference is that Plaintiff changed his number by providing Defendant with his new number, but another reasonable inference is that Plaintiff simply explained that he changed his number and Defendant had captured it.

      Speculating that Defendant could have indeed obtained his number from caller

6

identification, Plaintiff testified at his deposition that he could not remember calling Defendant and expressly informing them that his phone number had changed to the cell phone number, although he did state that at the time in question that number was his only personal number. (Hill Dep., ECF No. 18-1, at Page ID # 77-82.)  Plaintiff's apparent lack of recollection does not create a genuine issue of material fact; it does not dispute Defendant's evidence, but only fails to confirm or contradict it.  *See Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA (NLS), 2014 WL 2892290, at *4 (S.D. Cal. June 25, 2014) (granting summary judgment for defendant in a TCPA case in which the plaintiff offered only speculation as to how the defendant obtained her cell phone number).  Thus, what proves problematic for Defendant (as discussed below) is not Plaintiff's lack of recollection, but Defendant's failure to establish specifically how it obtained the cell phone number in 2008.

Plaintiff also testified that he eventually asked Defendant multiple times to cease calling his work number and that he recalled eventually giving express permission to call his cell number. (Hill Dep., ECF No. 18-1, at Page ID # 84-85.)  Because Plaintiff testified that he could not remember ever asking Defendant not to call his cell phone (*id.* at Page ID # 84), any possible revocation of this express consent is not an issue.  *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013 (revocation of consent case).

What the foregoing indicates is that Plaintiff provided Defendant with his cell phone number.  This is important in light of guidance by the Federal Communications Commission ("FCC") as to the meaning of "prior express consent."  The TCPA mandates that the FCC establish implementing regulations, and the FCC has released rules and regulations relevant to the consent issue.  In a 1992 Report and Order, the FCC stated:

7

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached. However, if a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. Therefore, calls may be placed to "captured" numbers only if such calls fall under the existing exemptions to the restrictions on autodialer and prerecorded message calls.

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992). The FCC subsequently stated in a 2008 Declaratory Ruling that, "[i]n this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification & Declaratory Ruling*, 23 FCC Rcd. 559, 559 ¶ 1 (Jan. 4, 2008). The FCC subsequently explained:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the *1992 TCPA Order*, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that:

8

> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.

*Id.* at 564 ¶ 9 (footnotes omitted).

> Another judicial officer interpreting the foregoing FCC guidance recently explained:
>
> The thrust of the FCC's Rulings is that a person need not specifically consent to be contacted using an autodialer or artificial or prerecorded voice. Rather, a person who knowingly provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor to contact him regarding his debt, regardless of the means.

*Ranwick v. Texas Gila, LLC*, No. 13-2792 (RHK/SER), 2014 WL 3891663, at *4 (D. Minn. Aug. 7, 2014). This Court agrees, subject to a possible qualification. The Court is not convinced that prior express consent to autodialing specifically was necessary, as Plaintiff contends. *See Gray v. Morgan Drexen, Inc.*, No. 2:13-cv-83-FtM-29DNF, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014) (explaining that the requisite consent targets the provision of a number at which a party could be reached and not consent to use an automatic telephone dialing system to effectuate that contact); *Reed v. Morgan Drexen, Inc.*, No. 13-61440-CIV, 2014 WL 2616906, at *7 (S.D. Fla. Apr. 4, 2014) (rejecting proposition that a party's consent must be to receiving autodialed, as opposed to manual, calls). Rather, the Court recognizes that the prior express consent perhaps had to target the *purpose* of the cell phone calls as opposed to *how* those calls were placed.

Leading the Court into this conclusion is Defendant's argument that Plaintiff consented to contact via his cell phone when he provided his cell phone number on various forms he completed in 2011, 2012, and 2013 as part of attempts to obtain a loan modification. Several of these forms indeed contain consent language, but Plaintiff argues that such language is of no

9

importance because Defendant never agreed to the modifications.  Plaintiff also attempts to evade the effect of these forms by stressing that he never consented to robocalling, a specificity of means argument that this Court has already rejected.  Plaintiff's better argument in regard to these forms is that the consent provisions on the forms target mortgage assistance.  To the extent that any cell phone calls to Plaintiff fell outside that narrow, specific purpose, this Court declines to recognize that they fell within Plaintiff's express consent.  *See Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3-4 (N.D. Ill. July 7, 2014) (recognizing that 2014 FCC guidance limits reading prior FCC guidance on prior express consent).  *Kolinek* explained that the apparent rule is thus that "the scope of a consumer's consent depends on its context and the purpose for which it is given.  Consent for one purpose does not equate to consent for all purposes." *Id.* at *4.  In other words, a person who knowingly provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor to contact him regarding his debt subject to context-specific qualification.

The Court is thus left with two analytic paths.  There is the "when and how" path related to Defendant obtaining Plaintiff's cell phone number in 2008.  Depending upon the answers to those issues, there is then the context-grounded forms path concerned with whether mortgage assistance encompasses loan delinquency.  If the 2008 events did not constitute prior express consent, the forms may be relevant given that their consent language could potentially encompass permission to call Plaintiff's cell phone about delinquency from 2011 onward.  The forms could also be irrelevant if a collection call does not fall within the scope of loan modification.

Plaintiff argues that none of this matters because he did not provide express consent to

call his cell phone at the time he initially incurred the underlying debt. Common sense and persuasive authority compel this Court to join those courts that have rejected such an argument, incorporating by reference herein their relevant reasoning. *See, e.g., Sharp v. Allied Interstate Inc.*, No. 12-CV-068S, 2014 WL 1224656, at *2 (W.D.N.Y. Mar. 25, 2014); *Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, at *10 (W.D.N.Y. Sept. 15, 2011).

Thus, addressing the extant issues, the Court concludes that, necessarily construing the evidence in the non-moving Plaintiff's favor, Defendant has failed to demonstrate that Plaintiff knowingly released his cell phone number to Defendant in January 2008. There is no dispositive proof as to how Defendant obtained the cell phone number at that time. Although the evidence indicates that Plaintiff eventually expressly asked Defendant (apparently in 2010) to use the cell number as the sole means of contacting him telephonically, there are calls that pre-date that request. And although there is evidence that although Plaintiff granted consent to Defendant via the loan modification forms to use his cell phone number, the language of the consent provisions restricts the use of that number to the topic of loan modification, which is distinct from the topic of debt collection. Plaintiff's conditioned consent therefore placed a limitation on Defendant, which prevents Defendant from obtaining summary judgment on every call based on the forms. Some 2011 through 2013 calls may fall under the form consent, and some may not, although Plaintiff cannot remember if anyone called him regarding the loan modification. (Hill Dep., ECF No. 18-1, at Page ID # 116.) Accordingly, Defendant is not entitled to summary judgment.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** both Defendant's motion for summary judgment (ECF No. 19) and Plaintiff's cross-motion for summary judgment (ECF No. 26).

**IT IS SO ORDERED.**

                                              /s/ Gregory L. Frost
                                             GREGORY L. FROST
                                             UNITED STATES DISTRICT JUDGE