# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  August 21, 2015

Mr. Troy John Doucet
Doucet & Associates
700 Stonehenge Parkway
Suite 2-B
Dublin, OH 43017

Ms. Kimberly Y. Smith Rivera
McGlinchey Stafford
25550 Chagrin Boulevard, Suite 406
Cleveland, OH 44122

Re: Case No. 14-4168, *Stephen Hill v. Homeward Residential, Inc.*
Originating Case No. : 2:13-cv-00388

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

STEPHEN M. HILL,

*Plaintiff-Appellant,*

*v.*

No. 14-4168

HOMEWARD RESIDENTIAL, INC., fka American
Home Mortgage Servicing, Inc.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:13-cv-00388—Gregory L. Frost, District Judge.

Argued: August 4, 2015

Decided and Filed: August 21, 2015

Before: CLAY and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Troy J. Doucet, DOUCET & ASSOCIATES, CO., L.P.A., Dublin, Ohio, for Appellant. Kimberly Y. Smith Rivera, MCGLINCHEY STAFFORD, Cleveland, Ohio, for Appellee. **ON BRIEF:** Troy J. Doucet, DOUCET & ASSOCIATES, CO., L.P.A., Dublin, Ohio, for Appellant. Kimberly Y. Smith Rivera, MCGLINCHEY STAFFORD, Cleveland, Ohio, for Appellee.

McKEAGUE, J., delivered the opinion of the court in which CLAY, J., and BERTELSMAN, D.J., joined. CLAY, J. (pg. 11), delivered a separate concurring opinion.

———————————

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

No. 14-4168                    *Hill v. Homeward Residential, Inc.*                    Page 2

———————————

## OPINION

———————————

McKEAGUE, Circuit Judge.    The Telephone Consumer Protection Act prohibits companies from making automated calls to a person's cellphone without that person's prior express consent.   We must primarily decide whether a person gives his "prior express consent" when he gives his creditor his cellphone number in connection with a debt he owes.   In line with the agency in charge of enforcing the Act, we conclude that this constitutes "prior express consent" to be called on that number about the debt.   Because the district court's decision reflects that rule, and because the court did not commit any other error, we affirm.

I

Congress passed the Telephone Consumer Protection Act in response to "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).   The Act accordingly "restricts certain kinds of telephonic and electronic" communications. *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015).   For example, the Act prohibits any person from making "any call" to someone's cellphone "(other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii).   The recipient of one of these prohibited communications can sue for private money damages—for at least $500 per violation. § 227(b)(3)(B).

Stephen Hill claims he received well over a hundred of these prohibited phone calls from his creditor, Homeward Residential, Inc., in connection to a debt he owed.   His story began in 2003 when he obtained a mortgage loan from Jordan West Companies.   He provided his home and work numbers on that loan.   Three years later, though, he cancelled his home phone and replaced it with a cellphone.   After his loan transferred to Homeward, he contacted the company to advise it that his primary phone number had changed.   Homeward then replaced Hill's

No. 14-4168                    *Hill v. Homeward Residential, Inc.*                    Page 3

obsolete home number with his cellphone number in its records.  Hill knew that this number would be used if Homeward needed to reach him about his mortgage.

Hill eventually fell behind on his mortgage, but Hill and Homeward worked out a loan modification so Hill could keep his home.  Hill listed his cell phone number on that document. When he continued to fail to pay his mortgage payments on time, Homeward called him to collect its payments.  In July 2010, Hill told Homeward not to call him at work anymore, instructing Homeward to call his cellphone instead.  This left his cellphone number as the only number listed in his records with Homeward.

Hill's loan modification failed, and he ultimately defaulted on his mortgage.  After that, from May 2011 through January 2013, Hill filled out at least ten forms with Homeward to try to mitigate his losses.  He provided his cellphone number on all these forms.  *See* Appellee Br. 3–4 (listing the forms).  He also provided express written consent for Homeward to call his cellphone.  *See, e.g.*, R. 19-3 (Uniform Borrower Assistance Form) at 30 ("I consent to being contacted concerning this request for mortgage assistance at any cellular or mobile telephone number I have provided[,] . . . includ[ing] . . . telephone calls to my cellular or mobile telephone.").  By doing so, Hill testified that he understood Homeward "would call me at that cell phone number."  R. 18-1 (Hill Depo.) at 49.

To collect from Hill and in other matters regarding his loan, Homeward called Hill on the number he provided: his cellphone.  In all, Homeward called him an alleged 482 times from 2009 to 2013.  One hundred seventy-six of these calls used Prairie, a device "capable of autodialing a phone number."  Appellee Br. 13.  But Homeward says that it didn't actually use its phone systems that way, instead only manually dialing Hill's number.  Likewise, Homeward says it never used automated messages to call Hill, although Hill disputes the point.

Hill, upset at these repeated calls, sued Homeward in federal court.  He complained that Homeward's calls constituted either knowing or negligent violations of the Telephone Consumer Protection Act, which, as explained, prohibits companies from using auto-dialers to call cellphone numbers without the called party's consent.  After discovery, each side moved for summary judgment, but the court denied each motion.  It held that two genuine issues of material fact existed: (1) whether Homeward used an "automatic telephone dialing system" to call Hill;

and (2) whether Hill offered his cellphone number to Homeward, or whether Homeward "captured" Hill's number and called Hill outside the scope of his consent.  R. 31 at 3–11.  The case would proceed to a jury on these two questions.

Before trial, Hill tried to subpoena an unidentified corporate representative of Homeward to testify about twenty-six topics at trial.  Homeward moved to quash the subpoena because it did not comply with Federal Rule of Civil Procedure 45.  Apparently recognizing its defects, Hill filed another subpoena one week before trial, mooting his first subpoena.  Homeward again moved to quash this subpoena because it also failed to comply with Rule 45, including it did not identify a witness and did not tender the necessary fees.  The district court agreed with Homeward and quashed the subpoena.  The court also rejected Hill's subsequent efforts to compel Homeward to produce a corporate representative at trial.

Trial began—and ended nearly as quickly as it began.  A jury returned a general verdict for Homeward after one day.  The court accepted the verdict and issued judgment.

## II

Hill appealed.  He makes three arguments:  (A) that the district court should have granted his summary-judgment motion because the record showed that Homeward used an auto-dialer to call his cellphone without his prior express consent; (B) that the jury instruction on "prior express consent" was too broad; and (C) that the district court should have compelled a Homeward witness to testify at trial.  None has merit.

## A

Hill's *post-trial* appeal from the district court's denial of his *pretrial* summary-judgment motion cannot succeed, because a losing party may not "appeal an order denying summary judgment after a full trial on the merits."  *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011); *accord Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990).  A district court's summary-judgment denial is "interlocutory" in nature—the antithesis of what Congress has given us jurisdiction to hear.  28 U.S.C. § 1291 (giving us jurisdiction over *final* decisions); *see Ortiz*, 562 U.S. at 188.  When a court denies a summary-judgment motion because of a genuine issue of fact (as the court did here) it "decides only one thing—that the case should go to trial"; the denial "does not settle

No. 14-4168                    *Hill v. Homeward Residential, Inc.*                    Page 5

or even tentatively decide anything about the merits of the claim." *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966). A trial, of course, *does* settle the matter on the merits and *is* final in nature. So once a trial occurs, the losing party may appeal from *that* judgment—but not from the summary-judgment denial, because § 1291 does not give us jurisdiction to hear those non-final appeals. *See Ortiz*, 562 U.S. at 184, 188–89.

We accordingly lack appellate jurisdiction over this portion of Hill's appeal. Hill lost his summary-judgment motion in August 2014 but did not appeal it until November 2014—after he lost at trial. He does not say that the evidence produced *at trial* shows that he must win, but rather that the evidence *at summary judgment* does. Here is what he should have done: make a Rule 50(a) motion, renew that motion after the jury verdict under Rule 50(b), and then appeal the denial of the Rule 50(b) motion. *See Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011). But here is what he did instead: make an oral Rule 50(a) motion, fail to renew that motion, and then appeal the denial of the *Rule 56 motion* rather than the Rule 50 motion. *See* R. 59 (Notice of Appeal). His "failure to renew" or appeal his "motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b)" leaves us "with no warrant" to address the summary-judgment denial. *Ortiz*, 562 U.S. at 185; *see Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). And even if his generic notice of appeal of the trial judgment encompassed the denial of his oral Rule 50(a) motion, *see, e.g.*, *Blockel v. J.C. Penney Co.*, 337 F.3d 17, 24 (1st Cir. 2003), he forfeited any argument on that issue by not discussing it in his briefing.

Even though Homeward did not address our lack of appellate jurisdiction, we have "a duty to consider [it] sua sponte." *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998) (per curiam). And this issue cannot be waived or forfeited by the parties. *See Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 659–60 (6th Cir. 2013).

No exceptions apply. When a summary-judgment denial involves "a pure question of law," our caselaw says that we may review it. *In re AmTrust Fin. Corp.*, 694 F.3d 741, 750 (6th Cir. 2012). But that is not what happened here; like *Ortiz*, it involved questions of fact. The district court held, for example, that there was a genuine issue of *fact* whether Hill gave his cellphone number to Homeward (*i.e.* expressly consented) or whether Homeward acquired it by other means. R. 31 at 10; *see also* R. 63 (Trial Transcript) at 30. "Depending upon the answers"

No. 14-4168                     *Hill v. Homeward Residential, Inc.*                     Page 6

to this and other factual issues, the court wrote, Hill may or may not have given his consent. R. 31 at 10. A jury had to decide. And after a jury has given its answer, we cannot review the court's pretrial order. *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012).

B

The district court's jury instructions on "prior express consent" were not overly broad. Our role in reviewing these instructions is merely to ensure they "adequately informed the jury of the relevant considerations" of the law. *United States v. Kuehne*, 547 F.3d 667, 679 (6th Cir. 2008) (citations omitted). A district court has discretion to deny proposed instructions, so we review this challenge "for abuse of discretion." *Id.* We may reverse only if the instructions "were confusing, misleading, or prejudicial." *Id.* (citations omitted). They were not here.

The court's jury instruction on this issue read, in full:

"'Prior express consent' means that before Defendant made a call to Plaintiff's cellular telephone number, Plaintiff had given an invitation or permission to receive calls to that number.

Autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."

R. 54 at 75.

This language adequately reflects the legal definition of prior express consent promulgated by the Federal Communications Commission (FCC). It was taken directly from the FCC's rulings—which shape the law in this area, *see* 47 U.S.C. § 227(b)(2) (charging the FCC with prescribing rules and regulations under the Act). The instructions paraphrased the FCC's original definition on "prior express consent"—that a party who gives an "invitation or permission to be called at [a certain] number" has given its express consent with respect to that number. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992). And the instructions quote verbatim the FCC's later clarification of that definition in the debtor–creditor context—that a creditor doesn't violate the Act when it calls a debtor who has "provided [his number] in connection with an existing debt." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

23 F.C.C. Rcd. 559, 564 (2008). A court does not misstate the law when it simply states the law. This jury instruction was proper.

Hill takes issue because the instruction leaves out a small excerpt from these rulings—that "prior express consent is . . . granted only if the wireless number was provided . . . during the transaction that resulted in the debt owed." *Id.* Hill adds the word *initial* before "transaction" and thus reads the rule to limit consent to only when it's given at the "initial transaction" that creates the debt. Appellant Br. 11 (emphasis in original); Reply Br. 4. That would be 2003 for Hill—before Homeward was Hill's creditor and before Hill even had a cellphone—too early, Hill says, for him to possibly give his express consent.

But this excerpt does not bear the weight Hill puts on it. Unlike Hill, the FCC never uses the words *initial* or *original* before "transaction." It instead says that the debtor has given his consent when he gives his number "*during the transaction*" that involves the debt (*i.e.*, "regarding the debt"). 23 F.C.C. Rcd. at 564–65, 567 (emphasis added). This language does not change the general definition of express consent; it instead "emphasize[s]" that creditors can call debtors only "to recover payment for obligations owed," not on any topic whatsoever. *See id.* at 564, 565 n.36. So it ensures that a debtor who gives his number *outside* the context of the debt has not given his consent to be called regarding the debt. FCC's Letter Brief, *Re: Nigro v. Mercantile Adjustment Bureau, LLC*, 2014 WL 3612689 (C.A.2), at *8–*9; *see Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806–07 (2d Cir. 2014) (holding that a third party did not give his prior express consent to be called about a debt when he gave his number outside of the context of the debt). *Contra* Reply Br. 9–11. Still, then, any "autodialed and prerecorded message calls to wireless numbers *provided by the called party in connection with an existing debt* are made with the 'prior express consent' of the called party." 23 F.C.C. Rcd. at 564 (emphasis added). And that's precisely what this jury instruction said. R. 54 at 75.

Although the FCC has yet to explicitly address this issue, *see* FCC's Letter Brief, 2014 WL 3612689 at *10–*11, courts interpreting the excerpt agree with our reading. A debtor consents to calls about "an existing debt" when he gives his number "in connection with" that debt, 23 F.C.C. Rcd. at 564—including after his initial signing of the loan. *See Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, at *10 (W.D.N.Y. Sept. 15,

No. 14-4168           *Hill v. Homeward Residential, Inc.*           Page 8

2011). While debtors may "[t]ypically" give their cellphone number "as part of a credit application" at the beginning of the debtor–creditor relationship, *see* 23 F.C.C. Rcd. at 565 n.36, it doesn't *have* to be that way. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014); *see, e.g.*, *Sartori v. Susan C. Little & Associates, P.A.*, 571 F. App'x 677, 683 (10th Cir. 2014) (holding that the debtor gave his prior express consent, even though he didn't give his number until one year after debt was incurred). Unsurprisingly, then, a person gives his "prior express consent" under the statute if he gives a company his number before it calls him.

Finally, a debtor does not need to give his consent to automated calls specifically; his general consent to being called on a cellphone constitutes "prior express consent." The FCC's regulations for telemarketers now require a more specific type of consent—namely, that the called party consents, in writing, to being called *by an auto-dialer*. *E.g.*, 47 C.F.R. 64.1200(f)(8). But these telemarketer regulations do not apply in the debtor–creditor context. 23 F.C.C. Rcd. at 565. In this context, once the debtor gives his consent to be called on his cellphone, the creditor can use automated calls to that number. *See id.* at 564.

The district court did not err by leaving out the excerpt from the FCC's ruling; its instructions adequately informed the jury of the law and did not confuse or mislead them.

### C

Hill's final argument—that the district court's denials of his requests to compel a Homeward representative to testify at trial—fares no better than his first two. The court made three rulings relating to Hill's request for a Homeward trial witness: It (1) quashed Hill's subpoena; (2) denied his request for a trial deposition; and (3) denied his motion to compel. We can reverse these rulings "only if . . . [they] w[ere] an abuse of discretion resulting in substantial prejudice." *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008); *accord* Appellant Br. 22. They were not even close.

(1) *The subpoena*. Hill's subpoena failed several aspects of Federal Rule of Civil Procedure 45, so the district court did not abuse its discretion in quashing it. Rule 45 requires, among other things, that the party serving it to tender certain fees, Fed. R. Civ. P. 45(b)(1), comply with geographical limitations, *id.* at 45(c), and allow a reasonable time to comply, *id.* at

No. 14-4168                  *Hill v. Homeward Residential, Inc.*                  Page 9

45(d)(3)(A)(i). And it requires the party to specify the "person" who is being subpoenaed, and to serve it on that "named person." *Id.* at 45(a)(1)(A)(iii), (b)(1), (c)(1); *see* David D. Siegel, *Practice Commentaries to Rule 45*, at C45-9 ("If a particular person in the employ of a corporation or other entity is the person sought as a witness, the subpoena should of course be delivered to that person."). Hill's subpoena did none of these things. The court was thus within its discretion to quash it.

(2) *The trial deposition.* The district court was right to deny Hill's unusual request—made after his subpoena failed—to take a "deposition" on new topics at trial. The Rules don't allow for it. Hill's claimed support, Rule 30(b)(6), does not help, because that rule contemplates depositions during *discovery*, not at trial. Of course, discovery had long since closed when Hill made this request—only one full business day before trial. Allowing a trial "deposition" in these circumstances would allow "an end-run around the failed subpoenas." R. 49 (District Court Order) at 1. Like the district court, we will not require it.

(3) *The motion to compel.* The court also correctly rejected Hill's last-ditch effort: his motion to compel. When all else failed—on the Friday before the Monday trial—Hill moved the district court to compel Homeward to bring a witness to trial. There is no procedure for this request in the Rules; Hill attempted it because he was out of options. But his real option—one that, at least five-and-a-half weeks before trial, Homeward told him he would need to do—was to subpoena a corporate witness who either "resides, is employed, or regularly transacts business in person" in Ohio. Fed. R. Civ. P. 45(c)(1)(B). If no one that Hill wanted fit that description, then he could have taken a deposition of a corporate officer during discovery for its use at trial. Yet he waited (and waited) . . . and then filed a deficient subpoena. Like his previous efforts, his motion to compel fails. The district court did not abuse its discretion in denying this request.

Hill tries to avoid these conclusions by urging us to "temper[]" the "technical" Rules by interpreting them "through the lens of common sense." Appellant Br. 24. But these rules were not made to be "tempered"; they were made to be "technical"—from the specific amount of fees tendered, to the court issuing the subpoena, to the geographic scope of the request. It is not surprising, then, that Hill can point to only one case that supports his position, *Conyers v. Balboa Ins. Co.*, No. 8:12-CV-30-T-33EAJ, 2013 WL 2450108, at *1 (M.D. Fla. June 5, 2013) (using

No. 14-4168                    *Hill v. Homeward Residential, Inc.*                    Page 10

Rule 30 to expand Rule 45).  Even if that case persuaded us that the Rules should be modified by judicial fiat, the district court did not abuse its discretion in enforcing them as written.

III

For these reasons, we affirm.

No. 14-4168 *Hill v. Homeward Residential, Inc.* Page 11

———————————

## CONCURRENCE

———————————

CLAY, Circuit Judge, concurring. I join the majority opinion in full. I write separately only to highlight the limited scope of the primary question presented in today's case. Plaintiff Stephen Hill challenges the district court's interpretation of the Federal Communications Commission (FCC) regulations concerning the circumstances under which a debtor gives a creditor "prior express consent" to call his cellphone. Hill does *not* challenge the FCC's interpretation of 47 U.S.C. § 227(b)(1)(A)(iii) as promulgated in paragraphs 9 and 10 of *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 (2008).

I agree with the majority that "a debtor does not need to give his consent to automated calls specifically" because the FCC regulations say as much. Majority Op. at 8. However, I express serious doubt as to whether the FCC correctly interpreted the statute when it promulgated its regulations. The notion that a debtor gives his prior *express* consent to receiving calls from a creditor using an auto-dialer or prerecorded voice simply by giving his cellphone number to the creditor strikes me as contrary to both the plain language of the statute and the underlying legislative intent. *See id.* at 2 (quoting *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012)). But because the plaintiff in this case does not challenge the FCC regulation itself, we do not have occasion to pass judgment on it. I concur in the majority opinion on the understanding that such a challenge is not foreclosed in a future case.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-4168

STEPHEN M. HILL,

       Plaintiff - Appellant,

   v.

HOMEWARD RESIDENTIAL, INC.,
fka American Home Mortgage Servicing, Inc.,
       Defendant - Appellee.

```
┌─────────────────────────────────┐
│  FILED                          │
│  Aug 21, 2015                   │
│  DEBORAH S. HUNT, Clerk         │
└─────────────────────────────────┘
```

Before:  CLAY and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk